Judge Crenshaw
delivered tbe opinion of the Court.
This is a proceeding by attachment against the steamer Guiñare, instituted in the Louisville chancery court, under the provisions of the Revised Statutes, 143-4, to obtain satisfaction for the value of a slave named Ambrose, who escaped upon her from New Madrid, Missouri, in April, 1855. A jury was impannelled in the case, who found the following facts, which are, substantially, the facts proved in the cause:
1. That the plaintiff resides in New Madrid, Missouri.
2. That the slave, Ambrose, left his owner at New Madrid, as charged, without the knowledge or con *453 •sent of the owner, and escaped upon said steamer, then lying at the wharf of New Madrid, and bound for Cincinnati on her trip from New Orleans to said city, and that the boat passed through the waters of Kentucky with said slave.
1. The owner of a slave domiciled in the state of Missouri, and having his slave there, eannot maintain a suit against a steamboat for the value of a slave escaping on such boat, on the ground that the boatpassedthro’ waters of Kentucky with the slave on board, under the statute of Kentucky. Revised Stai.,p. 143-4.)
3. That the value of the slave was $-1,000, and that the plaintiff had expended $100 in his efforts to recover him. The chancellor dismissed the petition, and the plaintiff has appealed to this court.
The third section of the law above referred to, reads as follows': “A steamboat, or any other boat or vessel, shall also be liable to indemnify the owner of any slave for any damage’he may sustain by reason of the conveying, or attempting to convey, the slave thereon out of the state, or from one part of the state to another, without the consent, in writing, of the owner of the slave, or unless the owner, or person having the rightful control of the slave, be also a passenger on the boat or vessel. This section shall also apply, when the slave is taken on board of the boat or vessel at any place out of this state.” The fifth section gives a lien upon the boat in such case., ■and authorizes the proceeding adopted in this suit.
The only question deemed important to decide is, whether the plaintiff, he and 'his slave being domiciled in the state of Missouri at the time of the slave’s escape, can maintain this suit, simply because the boat passed through the waters of Kentucky with the slave. We think he cannot.
This suit is against the boat by attachment, by virtue of the foregoing provisions of the Revised Statutes, and not a suit against the owners, captain, or any of the crew, for the recovery of damages in personam for the injury done to the plaintiff in taking and carrying away his slave. No person is made defendant, but the suit is simply in rem — against the boat.
It was, doubtless, the primary object of the legislature, in the enactment of the law above adverted to, to protect the slave owners of our own State. Still, *454 the legislature should be regarded as having intended to protect the owners of slaves, sojourning with them in this state, though not residents thereof, and also as having, intended to protect the owners of slaves who might reside in another State, and whose slaves might, at the time of their escape, be permanently or temporarily within our state ; and the law should be construed to embrace such states of case. But we do not believe that the legislature intended to afford the remedy of the enactment to the citizens of another state, whose slaves do not escape from this state, but from a state in which both the owner and slaves reside, and in which they are at the time of escape, simply because the slaves, after escape, may pass in a boat up the Ohio river, over which this state has jurisdiction.
2. To render the boat liable under the statute the slave must be conveyed, or attempted to be conveyed out of this state, or from one part of the state to another; and this, when the slave is taken on board of a vessel in this state, or at any place out of the state.
According to said third section, the slave, escap - ing, must be conveyed, or attempted to be conveyed, out of this State, or from one part of the state to another, &c., and this not only when the slave is taken on board of a vessel in this state, but at any place out of the state. The town of Weston, Missouri, is a place out of this state. Suppose a slave escapes from his owner in Weston, Missouri, where they both reside, on board a steamboat, destined from that port to Cincinnati, is it reasonable to construe our statute as applying to such a case, because the boat passes up the Ohio river with the slave, and, therefore, may be said in a certain sense to convey the slave from one part of the state to another? Certainly not.— Our law was not intended to meet and provide for such a case. And the state of ease presented in this controversy is precisely similar. If the owner and his slave be domiciled in this state, or be temporarily sojourning here, or the slave alone, have, at the time of his escape, his abode here permanently or temporarily, it matters not at what place he may be taken on board the boat upon which he escapes, provided he be taken out of the state, or from one point to another in the State; and, in such case, the pass *455 ing of the vessel with a slave up, or down, the river, to another point in, or out of this state, ought to be regarded as carrying the slave out of the state, or from one point to another in the state, as the case might be, and so be embraced by the statute. But such was not the case in the present controversy.
3. The statute was not intended to embrace slaves who were in no way subject to our laws at the time of their escape.
Had it been shown in this case that the slave had ever been landed upon our shores, and again taken on board and conducted off, it would seem that the statute might apply, and the boat be subjected for his escape. It might not appear to be unreasonable to construe the statute to embrace such a state of case. But whether the statute would, or not, embrace such a case, we do not decide, because it is not necessary. We have no doubt, however, that the legislature did not intend the statute to operate in reference to slaves who, at the time of escape, are in no way subject to our laws, and do not become so, except by simply passing in a boat up, or down the Ohio river.
Wherefore, the judgment is affirmed.